UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

DAVID S. SAVAGE,

    Plaintiff,

  v.

UNITED STATES OF AMERICA,

    Defendant.

_____

UNITED STATES OF AMERICA,

    Counterclaim Plaintiff,

  v.

DAVID S. SAVAGE and PHYLISS SAVAGE,

    Counterclaim Defendants.

CASE NO. CIV. S-04-2316 WBS KJM

MEMORANDUM AND ORDER RE:
MOTION FOR SUMMARY JUDGMENT

----oo0oo----

      Plaintiff David Savage filed suit against the United States seeking a refund of $24.14, paid in partial satisfaction of a tax penalty assessed against him as the person responsible for Precision Construction, Inc.'s ("PCI") failure to pay its payroll taxes. The government responded with a counterclaim against plaintiff and Phyliss Savage to reduce PCI's overdue

1

assessments to a judgment against the named parties.  The government now moves for summary judgment on its counterclaim against David Savage pursuant to Federal Rule of Civil Procedure 56.

I.   Factual and Procedural Background

Plaintiff served as PCI's President and Chief Executive Officer ("CEO") from 1974, when he acquired the company, through December 1998.  (Savage Decl. ¶¶ 2-3.)  However, citing health problems including obesity, diabetes, high cholesterol, and gout, plaintiff resigned his position as president on December 31, 1998.  (Id. ¶ 4.)  Concurrently, John Allison took over as President[1] and counterclaim defendant Phyliss Savage assumed responsibility for PCI's finances as the new Chief Financial Officer ("CFO").

Plaintiff's health problems were not resolved quickly.  He suffered a heart attack in February 1999 and an angina attack in September 2000.  (Id. ¶¶ 6-7.)  On the advice of his doctors, he began an "intensive diet treatment program" that helped him trim down significantly by September 2001.  (Id. ¶ 8.)  During this time, he was frequently absent from work and did not participate in the day-to-day management of the business.  (Id. ¶¶ 6-10.)  He did, however, retain the right to sign checks and occasionally exercised this power despite being only marginally

---

[1]  Pursuant to PCI's articles of incorporation, the same officer serves as both President and CEO.  (Def.'s Mem. in Supp. of Mot. for Summ. J. Ex. A-3 at 10 (Articles of Incorporation).) However, as part of the "reorganization" approved at the annual meeting on December 31, 1998, Allison assumed only the role of President and plaintiff stayed on as CEO.  (Id. Ex. A-10 at 2 (Minutes of the Board of Directors and Shareholders).)

2

involved in the business.  (Id. ¶ 5.)

PCI struggled financially during plaintiff's absence. Plaintiff learned in March 2001 that the company suffered a "large net operating loss for the year 2000." (Id. ¶ 11.) He also learned at some point that CFO Phyliss Savage failed to pay federal payroll taxes for the last two quarters of 1998 and the first three quarters of 1999. (Id.) Eventually, she resolved these liabilities, but then "began to miss payroll tax payments [again], beginning with the third quarter of 2000 through the end of 2001." (Id. ¶¶ 11, 13.)

Plaintiff received multiple notices regarding this second round of delinquent payroll taxes; however, Phyliss assured him that the taxes had actually been paid. (Savage Decl. ¶ 15.) Her accounting books and records, showing that the taxes had been paid in full, were reviewed by PCI's CPA. (Id.) Phyliss also "provided a letter, purportedly from the IRS, but later found to be a forgery, stating that the tax[es,] [through December 31, 2000, were] fully paid." (Id. ¶ 16.) Based on this evidence, plaintiff was persuaded that the matter had been resolved and was under control. (Id. ¶ 17.)

Meanwhile, plaintiff resumed active control of the business in August 2001. (Id. ¶ 18.) Discouraged by continuing losses, plaintiff decided to shut down PCI and began selling company assets and settling outstanding accounts. (Id.) As part of this process, he learned in December 2001 that PCI's payroll company, Paychex, had stopped making federal tax deposits "in September" because PCI had insufficient funds. (Id. at 19.)

Between August, 2001 and January 9, 2002, plaintiff

3

loaned PCI $230,000 of his personal funds to pay off existing debts. (<u>Id.</u> at 18.) Two days later, after a visit from Revenue Officer Mike Flath, plaintiff realized that PCI's delinquent payroll taxes dated back to September 2000, not 2001 as he mistakenly believed, based on Paychex's statement in December 2001 that it stopped paying the taxes "in September." (Pl.'s Stmt. of Disputed Facts ¶¶ 10-11.) Shortly after the discussion with Officer Flath, plaintiff repaid himself $70,000, which the government, as the preferred creditor, objected to as violative of 26 U.S.C. § 6672. (Def.'s Mot. to Dismiss 10.)

The government now estimates that PCI's unpaid assessments total $126,103.62. (Reynolds Decl. ¶ 8.) Plaintiff paid $24.14 on April 23, 2004 and concurrently filed for a refund, alleging that the a portion of the assessment made against him, $27,332.43, was erroneous and illegal.[2] (Compl. ¶ 8.) Several months later, plaintiff filed suit in federal court

---

[2] In his complaint, plaintiff states that on March 15, 2004, the government made an assessment against him of only $27,332.43, which represents the amount owed for the quarter ending on June 30, 2001. However, the government, through its counterclaim and this motion for summary judgment, seeks to recover from plaintiff the entire amount owed, $130,974.98, which includes missed payments for the last two quarters of 2000 and all four quarters of 2001. (Answer & Countercl. ¶¶ 7-8; Def.'s Mem. in Supp. of Mot. for Summ. J. 12.) The remaining balance due, plus interest, was $126,103.62 as of December 31, 2005. (Reynolds Decl. ¶ 8.) Although the government's counterclaim seeks recovery from both plaintiff and Phyliss Savage, the government can, and hereby does, move to hold plaintiff liable for the entire amount because liability under § 6672 is joint and several. <u>See</u> <u>Schultz v. United States</u>, 918 F.2d 164, 167 (Fed. Cir. 1990); <u>Brown v. United States</u>, 591 F.2d 1136, 1142 (5th Cir. 1979); <u>Hartman v. United States</u>, 538 F.2d 1336, 1340 (8th Cir. 1976).

4

pursuant to 26 U.S.C. § 6532(a)(1)[3] to collect the refund and abate the tax assessment. (Id. ¶ 11.) The government answered with a counterclaim, seeking to reduce PCI's overdue assessments to a judgment against plaintiff and Phyliss. The focus of the government's instant motion for summary judgment is its counterclaim.

II. Discussion

    A. Legal Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case.

---

[3] 26 U.S.C. § 6532(a)(1) provides that:
[A] suit . . . for the recovery of any internal revenue tax, penalty, or other sum, shall [not begin] before the expiration of 6 months from the date of filing the [refund] claim . . . unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

1  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
2  Alternatively, the movant can demonstrate that the non-moving
3  party cannot provide evidence to support an essential element
4  upon which it will bear the burden of proof at trial.  Id.
5           Once the moving party meets its initial burden, the
6  non-moving party must "go beyond the pleadings and by her own
7  affidavits, or by 'the depositions, answers to interrogatories,
8  and admissions on file,' designate 'specific facts showing that
9  there is a genuine issue for trial.'"  Id. at 324 (quoting Fed.
10 R. Civ. P. 56(e)).  The non-movant "may not rest upon the mere
11 allegations or denials of the adverse party's pleading."  Fed. R.
12 Civ. P. 56(e); Valandingham v. Bojorquez, 866 F.2d 1135, 1137
13 (9th Cir. 1989).  However, any inferences drawn from the
14 underlying facts must be viewed in the light most favorable to
15 the party opposing the motion.  Matsushita Elec. Indus. Co., Ltd.
16 v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
17          The substantive law governing a case determines the
18 materiality of a fact.  T.W. Elec. Serv., Inc. v. P. Elec.
19 Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Here, the
20 applicable tax law provides, pursuant to 26 U.S.C. § 6672(a),
21 that a person may be liable for penalties assessed against a
22 company that are "equal to the total amount of tax evaded, or not
23 collected, or not accounted for and paid over."  A "person" for
24 the purposes of § 6672 includes "an officer or employee of a
25 corporation, or a member or employee of a partnership, who as
26 such officer, employee, or member is under a duty to perform the
27 act in respect of which the violation occurs."  26 U.S.C. §
28 6671(b).  Additionally, such individuals must be "responsible"

6

and act wilfully in failing to collect or pay over the withheld taxes. <u>Davis v. United States</u>, 961 F.2d 867, 869-70 (9th Cir. 1992).

B. <u>Analysis</u>

The government here seeks to hold plaintiff personally liable for $126,103.62[4] as a "responsible person" who wilfully failed to comply with § 6672. (<u>See</u> Decl. of Richard Reynolds, Ex. FF (Certificates of Assessment and Payment showing the extent of PCI's overdue taxes)). Plaintiff does not dispute the existence or amount of this assessment. Hotly contested however, are the government's assertions that plaintiff was both a "responsible person" and a willful offender.

1. <u>Plaintiff as a "Responsible Person"</u>

The Ninth Circuit has consistently identified persons who have "the final word as to what bills should or should not be paid, and when" as "responsible" persons under § 6672. <u>Purcell v. United States</u>, 1 F.3d 932, 936 (9th Cir. 1993) (quoting <u>Wilson v. United States</u>, 250 F.2d 312, 316 (9th Cir. 1958)). A person has the final word if that person had "the authority required to exercise significant control over the corporation's financial affairs, regardless of whether he exercised such control in fact." <u>Purcell</u>, 1 F.3d at 937. In other words, responsibility is a matter of status, duty, and authority, not knowledge. <u>Davis</u>, 961 F.2d at 873 (upholding the trial court's finding of "responsible person" based on the plaintiff's position as the

---

[4] This figure does not account for applicable interest that has accrued since December 31, 2005. (<u>See</u> Reynolds Decl. ¶ 8 (prospectively calculating interest through the end of the year).)

7

president, member of the board, and major shareholder, even though the plaintiff had no knowledge of the tax default). "Authority turns on the scope and nature of an individual's power to determine how the corporation conducts its financial affairs; the duty to ensure that withheld employment taxes are paid over flows from the authority that enables one to do so." Purcell, 1 F.3d at 936.

Plaintiff contests any characterization of himself as a "responsible person" during the relevant time frame, and rather casts himself as passive investor who was plagued by health issues that prevented him from participating in the management of PCI. (Pl.'s Opp'n to Mot. for Summ. J. 7.) Indeed, as a result of his recurring health problems and an intensive weight loss program, plaintiff's physical presence at PCI's corporate office was limited and sporadic.[5] (Savage Decl. ¶¶ 7-10.) Plaintiff's frequent absences forced the day-to-day management of the company into the hands of Phyliss Savage and John Allison. (Pl.'s Opp'n to Mot. for Summ. J. 2.) However, regardless of these absences, plaintiff does not dispute that, through his title as CEO, he retained significant formal authority in the management of PCI. (Id. at 7-8.) "Courts must look beyond official titles to the actual decision-making process," but they need not ignore them altogether. See Jones, 33 F.3d at 1140.

Moreover, plaintiff also describes several instances

---

[5] Plaintiff's absences are allegedly due to an angina attack, a drastic weight loss program necessary to prevent its recurrence, and knee surgery. (Savage Decl. ¶¶ 7-10.) According to the plaintiff, these maladies forced prolonged absences and, when his health permitted, 20 hour work weeks. (Id. ¶ 7.)

when he exercised his formal authority to control PCI's financial affairs during the time period at issue. First, plaintiff, as a signatory on the corporate checking account, wrote and signed 27 checks during the relevant 18 month period.[6] (Savage Decl. ¶ 5.) Second, starting in "mid-2001," plaintiff instructed his CFO to pay some creditors ahead of others. (Latterell Decl. Ex. AA (Pl.'s Resp. to Def.'s Interrog. No. 8).) Third, plaintiff secured a $100,000 loan against his personal residence to fund PCI and, on two other occasions, infused personal funds into PCI that were acquired through the sale of his personal property.[7] (Savage Decl. ¶ 12.)

In these instances, plaintiff's authority exceeded mere nominal authority. By exercising his ability to write and sign checks, prefer one creditor over another, and supplement corporate accounts with personal funds, plaintiff determined how PCI would conduct its financial affairs. See Hochstein v. United States, 900 F.2d 543 (2d Cir. 1990) (holding that the controller of a business who had check-signing authority, made the initial determination of the order in which bills were to be paid, and who requested funds on behalf of the business, is a "responsible person" under § 6672). It is of no consequence that this power

---

[6] Plaintiff asserts that his prolonged absences and deficiencies in computer training impeded his check-writing ability. (Savage Decl. ¶ 5). However, in light of plaintiff's admitted successful exercise of check writing power, this argument is irrelevant.

[7] Plaintiff's deposition testimony further reveals that he "participated any time a vehicle was bought", that he was responsible for signing loan security agreements from 1999 through 2001, and that he paid a property tax bill for PCI in March, 2001. (Savage Decl. Ex. 2 (David Savage Dep. 53: 14, 20-23 and 59:9-16).)

9

was exercised infrequently as long as the plaintiff possessed this power during the relevant period.  Purcell, 1 F.3d at 937 ("That an individual's day-to-day function in a given enterprise is unconnected to financial decision making or tax matters is irrelevant where that individual has the authority to pay or to order the payment of delinquent taxes.").  Plaintiff thus undisputedly possessed the authority required to exercise significant control over the corporation's financial affairs at different times throughout the period at issue.[8]  These facts thus establish that plaintiff was a "responsible person" under § 6672 for all six quarters.  Cf. Schlicht v. United States, No. 03-1606, 2005 WL 2083103, at *3 (D. Ariz. Aug. 25, 2005) (holding that a corporation's president, who "was charged with 'general active management' . . ., had check signing authority, hired and fired employees, and on at least one occasion . . . paid trust fund taxes" was a responsible party even though he did not exercise his authority over finances on a regular basis).

///

---

[8]   Significantly, plaintiff does not offer any evidence that he lacked the authority to pay PCI's taxes.  See Alsheskie v. United States, 31 F.3d 837, 839 (9th Cir. 1994) (distinguishing the district court's finding that the plaintiff was not a responsible party from a case where "the record contained no evidence that . . . the responsible party[] was without authority to pay the taxes.").  His arguments regarding his responsibility focus almost entirely on his inability to exercise his authority during his health-related absence. (Pl.'s Opp'n to Mot. for Summ. J. 9).  This argument misses the mark.  The "responsibility" prong of the liability analysis addresses only the existence of authority; the "willfulness" prong considers the ability of the individual to act upon his authority.  See Phillips v. IRS, 73 F.3d 939, 943 (9th Cir. 1995) (addressing the absence caused by an individual's paralysis as part of the "willfulness" element in § 6672); Keith v. United States, No. BK-76-1342, 1978 WL 1160, at *8 (E.D. Va. Feb. 21, 1978) (plaintiff's medical excuse did not negate wilfulness).

10

2. <u>Plaintiff's Willfulness</u>

Willfulness, under § 6672, has long been defined as "a voluntary, conscious and intentional act to prefer other creditors over the United States." <u>Purcell</u>, 1 F.3d at 938 (quoting <u>Davis</u>, 961 F.2d at 871). Willfulness does not require the intent to defraud the government or any other bad motive. <u>Davis</u>, 961 F.2d at 871. "Once a responsible person gains knowledge of a payroll tax deficiency, he is liable for all periods during which he was a responsible party, regardless of whether those periods precede or follow the date he gained that knowledge." <u>Schlicht</u>, 2005 WL 2083103, at *4 (citing <u>Davis</u>, 961 F.2d at 873). Accordingly, a deliberate decision to use corporate funds after receiving knowledge of a payroll tax deficiency "falls within the literal terms of this Circuit's definition of willfulness." <u>Davis</u>, 961 F.2d at 871; <u>see also</u> <u>Thomsen v. United States</u>, 887 F.2d 12 (1st Cir. 1989) (holding that once a person is aware of the liability to government, that person has a duty to ensure that the taxes are paid before any payments are made to other creditors (citing <u>Mazo v. United States</u>, 591 F.2d 1151, 1157 (5th Cir. 1979)).

Plaintiff contends that his physical ailments raise a genuine issue of material fact as to whether he could exert control over the payroll taxes and intentionally withhold payment. (Pl.'s Opp'n to Mot. for Summ. J. 10.) Likewise, plaintiff contends there is a genuine issue of material fact as to whether Phyliss Savage successfully misled him into a reasonable belief that there was no payroll tax deficiency. (<u>Id.</u> at 11.) Because these circumstances could bear on whether

11

plaintiff willfully, voluntarily, or intentionally ignored his duty to pay PCI's taxes, factual questions remain as to whether, prior to January 11, 2002, plaintiff acted willfully.  See United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994) ("Where . . .the individual's position makes his claim of ignorance of nonpayment plausible and there are no other indicia of knowledge, the matter of his willfulness is an issue to be tried.").

However, these arguments are not material to plaintiff's willfulness after January 11, 2002, given that plaintiff was undisputably aware of the unpaid employment taxes from that day forward.  (Savage Decl. ¶ 19.)  Significantly then, despite this knowledge, plaintiff, who had personally loaned the corporation $230,000, repaid himself $70,000 "after [he] became aware that [PCI] had tax problems."  (Latterell Decl. Ex. CC (David Savage Dep. 88:5-18, Aug. 18, 2005) (emphasis added).) Through this act, plaintiff consciously and intentionally preferred himself, as a creditor, over the United States.

These facts are determinative of plaintiff's liability because once a responsible person consciously and intentionally prefers another creditor over the United States, factual issues as to prior ignorance of non-payment are irrelevant.  Teel v. United States, 529 F.2d 903, 905-06 (9th Cir. 1976) (holding that the use of funds received from the sale of old inventories and the sale of new merchandise, after knowledge of arrearages in employee tax payments, forecloses an inquiry into prior ignorance regarding the willfulness element of § 6672).  Plaintiff therefore cannot rely on his previous physical inability to pay the deficient taxes or his previous ignorance of the deficient

12

taxes to evade liability, even assuming that he could prove these theories at trial. As a matter of law, plaintiff acted willfully in accordance with § 6672.[9] Pursuant to Davis, this finding of willfulness extends to all quarters where plaintiff was a responsible person, or all six quarters in issue.

At oral argument, plaintiff's attorney vigorously took the position that plaintiff should at most be liable for $70,000, rather than the full amount of the tax delinquency, because he only willfully preferred other creditors by this amount. (See also Pl.'s Opp'n to Mot. for Summ. J. 12 n.10.) The court is aware that some courts have limited a responsible person's liability to the extent that the corporation had funds available to pay the government when that person first learned of the delinquency. See, e.g., Kinnie v. United States, 994 F.2d 279, 285 (6th Cir. 1993); Ross v. United States, 949 F. Supp. 536, 543 (D. Ohio 1996) (citing Gephart v. United States, 818 F.2d 469 (6th Cir. 1987)). Under this approach, the fact that the court

---

[9] Plaintiff argues for an application of the exception to § 6672 liability recognized by the Supreme Court in Slodov v. United States, 436 U.S. 238 (1978). That exception, however, applies only in situations where new management of a corporation assumes control after the failure to collect and withhold employment taxes has occurred. Slodov, 436 U.S. at 259-60. Moreover, at the time the new management assumes control, there can be no funds available to satisfy the obligation to the government and subsequently generated funds cannot be directly traceable to the withheld employment taxes. Id. In the instant case, plaintiff remained in management as a responsible person from the time the withholding tax obligation arose until the time it was willfully avoided. "In the case of individuals who are responsible persons both before and after withholding tax liability accrues . . . there is a duty to use unencumbered funds acquired after the withholding obligation becomes payable to satisfy that obligation; failure to do so when there is knowledge of the liability . . . constitutes willfulness." Purcell, 1 F.3d at 938 (quoting Davis, 961 F.2d at 876).

13

only has evidence that $70,000 was available to pay PCI's debts on January 11, 2002 would be significant.

However, in <u>Davis</u>, 961 F.2d at 871, the Ninth Circuit noted that the taxpayer "had sufficient income to satisfy in full [the corporation's] tax delinquency" but also stated that the decision "to pay commercial creditors rather than <u>to diminish</u> [the corporation's] tax debt falls within the literal terms of the Circuit's definition of willfulness." (emphasis added); <u>see also</u> <u>Sorenson v. United States</u>, 521 F.2d 325, 328 n.3 (9th Cir. 1975) (suggesting that inability to pay is not relevant in a § 6672 willfulness assessment). Thus, the Ninth Circuit has declined to take the approach of limiting liability for willfulness to the amount available to the corporation at the time other creditors were preferred over the government.[10]

Allowing plaintiffs to discount their liability based on the amount they actually wrongfully divert to other creditors would seem to be inconsistent with the language of the statute, which punishes <u>any</u> attempt to evade payment of the tax owed with "a penalty equal to <u>the total amount</u> of the tax evaded[] or not collected . . . ." 26 U.S.C. § 6672(a) (emphasis added). Moreover, although it is often the case that the assets wrongly and willfully diverted to creditors other than the United States would have been sufficient to cover the corporation's entire § 6672 tax liability, the court is not aware of any case where a

---

[10] If there were any doubt about this result, it has been made explicit in an unpublished decision which this court is not permitted to cite, in which the Ninth Circuit expressly rejected a request to limit liability to the amount available to the corporation at the time the plaintiff willfully preferred other creditors.

14

responsible party preferred other creditors and escaped liability for the total amount owed because the corporation, at the time, could not have paid its <u>entire</u> debt anyway.  <u>But cf</u>. <u>Alabama v. King</u>, No. 91-B-2121-S, 1995 WL 423171, at *7 (N.D. Ala. Mar. 29, 1995) (holding plaintiff liable for the full amount owed even though, at the time plaintiff preferred other creditors, the company only had "<u>nearly</u> the sufficient unencumbered funds with which [plaintiff] could have paid the state and federal tax liabilities" (emphasis added)).

III. <u>Conclusion</u>

As a matter of law, plaintiff is a "responsible person" who willfully avoided federal tax obligations under § 6672.  In accordance with that section, plaintiff can be personally liable for the outstanding assessments owed by PCI, in the amount of $126,103.62, plus interest accrued during the pendency of this motion until paid, pursuant to 26 U.S.C. §§ 6601, 6621-22 and 28 U.S.C. § 1961(c).

IT IS THEREFORE ORDERED that defendant's motion for summary judgment on its counterclaim against plaintiff be, and the same hereby is, GRANTED.

DATED:  February 21, 2006

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE